IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| **TANYA EMKEY** and **TIMOTHY EMKEY**, on behalf of themselves individually and on behalf of all others similarly situated,<br>6048 Florida Circle<br>South Apollo Beach, FL 33572 | *<br>*<br>*<br>* | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| vs. | * | |
| **W.S.C., INC.**<br>150 Monument Road<br>Bala Cynwyd, PA 19004 | *<br>* | |
| -and- | * | |
| **INDIAN ACRES CLUB OF CHESAPEAKE BAY, INC**<br>P.O. Box 65<br>Georgetown, MD 21930 | *<br>.<br>*<br>* | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CLASS ACTION COMPLAINT**

**COMES NOW** Tanya and Timothy Emkey (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, and hereby brings this suit against the Defendants W.S.C., Inc., and Indian Acres Club of Chesapeake Bay, Inc., (collectively the "Defendants"), and for grounds state as follows:

**INTRODUCTION**

1.      The present lawsuit is an action for specific performance and for damages arising from a breach of Restated Declarations relating to a planned real property development located in Cecil County, Maryland, which is generally referred to as Indian Acres of Chesapeake Bay

1

(hereinafter "Indian Acres").

2. The Restated Declarations, recorded among the land records for Cecil County, require in part that when Eighty Percent (80%) of the original lots in Indian Acres are sold to the public that the developer shall sell at a predetermined price all of the public areas and amenities associated with the development to the lot owners of Indian Acres.

3. Despite being on notice that the threshold for the sale of public areas and amenities had been reached and triggered, Defendant W.S.C., Inc., has refused to transfer the common elements to the lot owners of Indian Acres as required by the Restated Declarations.

4. Md. Real Prop. Art. §11B-106.1(a)(1) states that an election of a home owners association shall be held within Sixty (60) days of the sale of Seventy Five Percent (75%) of the original lots has been completed.

5. That Md. Real Prop. Art. §11B-106.1(d) requires the transfer of real property, personal property, and other information to the lot owners within Thirty (30) days of the home owner's meeting.

6. The lot owners of Indian Acres have attempted to form a homeowners association and elect officers but have been enjoined by the Defendants from doing so via a complaint and proceedings filed in the Circuit Court for Cecil County, Maryland. (Case No.: C-07-CV-17-148).

7. That the Defendants continue to operate the common amenities and the development at the expense of the lot owners of Indian Acres.

8. That the Defendants have refused to sell the common amenities to the lot owners of Indian Acres and have refused to allow the formation of a home owners association so that they may continue to collect dues and other moneys from the lot owners in order to enrich

themselves.

9. That the Defendants have misappropriated and mismanaged the monies collected from the lot owners of Indian Acres.

10. Not only have the Defendants knowingly concealed and conspired to prevent the lot owners from taking control of the development, but the Defendants have done so to the financial detriment of the lot owners of Indian Acres.

11. All of the relief sought herein stems initially from Defendants' wanton failure and purposeful refusal to abide by the Restated Covenants and Md. Real Prop. Art. §11B-101, *et seq*.

12. These class claims and the facts which support them are referred to individually or, at times, collectively as the "Lawsuit."

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over matter over the state law claims asserted in this Lawsuit pursuant to 28 U.S.C. §1332(d)(2), because this suit is a class action in which the matter in controversy exceeds $5,000,000 dollars of interest and costs, and at least one member of the putative class is a citizen of a different statement from any Defendant. 28 U.S.C. §1332(d)(2)(a).

14. Plaintiffs, husband and wife, are adult residents of the State of Florida. Defendant W.S.C., Inc., is a corporation formed in the State of Pennsylvania and registered to conduct business in the State of Maryland. Defendant Indian Acres Club of Chesapeake Bay, Inc., is a corporation formed in the State of Maryland and is a wholly owned subsidiary of Defendant WSC.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more of the Defendants are subject to personal jurisdiction in this District, and because one or more of the Defendants engaged in substantial conduct relative to Plaintiff's claims within this District, and because Defendants have caused harm in this District to Plaintiffs and members of the Class.

## PARTIES

16. Plaintiff, Tanya Emkey ("Mrs. Emkey"), is an adult resident of the State of Florida who resides at 6048 Florida Circle, South Apollo Beach, FL 33572. Mrs. Emkey owns Three (3) individual lots within the Indian Acres development and has been a lot owner in the development since January 21, 2010.

17. Plaintiff, Timothy Emkey ("Mr. Emkey"), is an adult resident of the State of Florida who also resides at 6048 Florida Circle, South Apollo Beach, FL 33572. Mr. Emkey owns Three (3) individual lots within the Indian Acres development and has been a lot owner in the development since January 21, 2010.

18. Defendant W.S.C., Inc., ("WSC"), is a corporation formed under the laws of the State of Pennsylvania with its principal place of business in Cecil County, Maryland. WSC was the original owner of the real property and the developer of the subdivision and community known as Indian Acres. WSC continues to operate and has involvement with the development by engaging in the sale and resale of lots within the development.

19. Upon information and belief, Defendant Indian Acres Club of Chesapeake Bay, Inc. ("IAC") is corporation formed under the laws of the State of Maryland with its principal place of business in Cecil County, Maryland. IAC acts as the operator of the community and is involved in assessing, collecting, and appropriating moneys collected from the lot owners.

## **FACTS COMMON TO ALL COUNTS**

20. In July of 1978, WSC filed Restated Declarations ("Declarations") in Cecil County, Maryland, recorded at Liber 20, folio 330 for a large parcel of land that was subdivided into Nine (9) glens containing a total Two Thousand One Hundred and Fifty-Four (2,154) lots. (*See* Ex. 1 - Declarations).

21. That pursuant to the Declarations the individual lots were to be referred to as "Funsteads" and were to be made available to the general public and would be subject to the covenants and restrictions contained within the Restated Declarations.

22. Section 11(K) of the Declaration states, in relevant part, that:

> It is the intention of the Declarant that at a certain time in the future, Declarant will transfer to the Club all of the Declarant's rights and obligations with respect to the operation of the Property (excepting rights with respect to the unsold Funsteads). Declarant and its predecessors in interest respecting the Property, have contracted with certain Funstead purchasers and Funstead owners that the time of such transfer shall take place when eighty (80%) of the total number of Funsteads held for sale or other disposition by Declarant and its predecessors have been sold, leased, conveyed or otherwise disposed of (which total number of Funsteads shall be determined with reference to the latest recorded plat or plats covering all nine (9) Glens).

23. That pursuant to Section 11(K)(1) of the Declarations the purchase price was to be Four Hundred and Ninety Five Dollars ($495.00) per lot.

24. Section 11(K)(3) of the Declarations provides that the payment may also be made by paying Ninety-Five Dollars ($95) per lot with the additional Four Hundred Dollars ($400.00) being paid in Four (4) equal One Hundred Dollar ($100.00) annual installments.

25. That WSC had by their own internal audit in May of 2017 which found that WSC had sold Eight One Percent (81%) of the original lots. (*See* Ex. 2).

26. That a letter was sent to Defendant WSC on December 13, 2016 requesting that the process for the sale and transfer of the common elements begin forthwith. (*See* Ex. 3).

27. As of the date of the filing of this Lawsuit Defendant WSC has refused to comply with the terms and conditions outlined in the Declarations.

28. That WSC has continued to profit from the operation of the community and its amenities through the use of their wholly owned subsidiary corporation Defendant IAC. Defendant IAC is responsible for the assessment and collection of dues and other moneys from the lot owners.

29. WSC and IAC continue to operate and therefore collect moneys from lot owners in violation of the Declarations and profit from those collections.

## CLASS ALLEGATIONS

30. Plaintiff's bring this Lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class of persons similarly situated: "All present and former lot owners of Indian Acres who owned, in whole or in part, any ownership interests or property rights in any lots in the Indian Acres development beginning from the time that the Eighty Percent (80%) developer lot sale threshold had been reached and triggered under the Declarations, or May 1, 2017, whichever is earlier."

31. Excluded from the Class are any lot owners who are currently employed by either Defendant or otherwise have responsibility or involvement in the operation of the common elements for the benefit of the Defendants.

32. <u>Numerosity</u>: Upon information and belief, the Indian Acres development is comprised of approximately 2,154 lots, which are owned, in whole or in part, by approximately 1,740 individuals or entities. Most, if not all, of the lot owners are likely members of this Class, and as such the Class is so numerous that joinder of all members is impracticable.

33. <u>Commonality</u>: Common questions of law and fact exist as to the claims of the

Plaintiffs and the Class against the Defendants and such common questions predominate over any questions affectively individual members of the putative Class.  The common questions of law and fact include, but by no means ar limited to: whether Defendants have breached the governing documents and Declarations of the Indian Acres development; whether the Defendants have violated the Maryland Real Property Article and other laws; and whether the Defendants have been unjustly enriched by their actions.  The issues regard relief are also common to members of the Class, especially those involving specific performance under the Declarations.

34.   <u>Typicality</u>.  The Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arose from the same events, practices and course of conduct by the Defendants.  The legal theories advanced by Plaintiffs are likely the same legal theories that would be advance by all class members had they pursued their rights and remedies individually.  Plaintiffs' claims are also typical of the putative Class because, to the extent Plaintiffs obtain equitable or declaratory relief, such relief would affect all Class members equally.

35.   <u>Adequacy</u>.  Plaintiffs and their counsel will fairly and adequately represent and protect the interest of all members of the Class, and there will be no difficulties managing this case as a class action.

36.   Upon information and belief, Defendants do not have any defenses unique to Plaintiffs that would make their claims atypical of the remainder of the Class, or otherwise cause Plaintiffs to be in conflict with the Class.  In fact, the defenses of the named Defendants (to the extent they exist) to the Plaintiffs would be identical or substantially similarly to that of the Class.

37. The requirements of Fed.R.Civ.P 23 are easily satisfied because prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.  Further, Class treatment is a superior method for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impractical.  Furthermore, because the damages suffered by some individual members of the Class may in some instances be relatively small, the expense and burden of individual litigation make it impossible or impractical for such class members individually to redress the wrongs.

## DAMAGES

38. That the dues assessed against each lot were One Thousand Five Hundred and Forty Dollars ($1,540) per year for each primary lot and Five Hundred and Forty Dollars ($540.00) per year for each secondary lot.

39. Since January 1, 2017 the dues have been increased to One Thousand Six Hundred and Thirty Dollars ($1,630) per year for each primary lot and Six Hundred and Thirty Dollars ($630.00) per year for each secondary lot.

40. The total number of lots held by individual owners are approximately One Thousand Seven Hundred Forty (1740).

41. Since January 1, 2017 WSC and Indian Acres Club of Chesapeake Bay, Inc., have collected more Five Million Dollars ($5,000.000.00) in dues and inflated revenue which were not owed to them but were instead owed to the lot owners as a community association.

42. Despite repeated requests Defendant IAC has refused to allow inspection and copying of any documents regarding the operation of the home owner's association.

## COUNT ONE
## BREACH OF CONTACT
(Common Law)
(WSC)

43.     Plaintiffs and the Class incorporates by reference all allegations contained in paragraphs 1 through 42 of the Complaint as if more fully set forth herein.

44.     The Declarations in this Lawsuit contain enforceable covenants, including but not limited to the requirement that when Eighty Percent (80%) of the original lots have been transferred, sold, leased, or otherwise disposed of that WSC must sell off the common amenities as well as control of the operations of the community to the lot owners.

45.     That WSC has repeatedly materially breached and continues to materially breach the Declarations by refusing to perform under the Declaration despite being placed on notice that the threshold had been reached.

46.     That WSC has refused to even acknowledge or answer the allegation that the threshold number has been reached.

47.     That WSC refused to allow the purchase as it will end their ability to profit through the collection of dues and other fees paid by lot owners through its wholly owned subsidiary IAC.

48.      That the refusal to offer or participate in or offer the sale is a direct violation of the Declarations.

49.     That WSC's actions further constitute a breach of their fiduciary duties to the Plaintiffs and the Class, and further constitute a breach of the implied duty of good faith and fair dealing under the governing documents and Declarations of Indian Acres.

50.     As a direct and proximate result of Defendant's said conduct, Plaintiffs and the Class have suffered and will continue to suffer substantial damages and irreparable harm.

51.     That in addition to any monetary relief awarded, a Trustee should be appointed for the purposes of facilitating the transfer of the common area elements and other business operations of the property to the lot owners, Plaintiffs and Class herein pursuant to the Declarations.

## COUNT TWO
## VIOLATION OF MARYLAND REAL PROPERTY ARTICLE
(Md. Code., Real Property, §11B-106.1, *et seq*.)
(All Defendants)

52.     Plaintiffs and the Class incorporate by reference all allegations contained in paragraphs 1 through 51 of the Complaint as if more fully set forth herein.

53.     That §11B-106.1(a)(1) requires that a meeting of the home owner's association shall be held within Sixty (60) days of the time at which Seventy Five Percent (75%) of the total number of lots that may be a part of the development after all phases are completed are sold to members of the public for residential purposes.

54.     That §11B-106.1(d) requires that within Thirty (30) days of the home owners association meeting that the Declarant shall deliver to the home owners association:

(1) The deeds to the common areas;
(2) Copies of the homeowners association's filed articles of incorporation, declaration, and all recorded covenants, plats, restrictions, and any other records of the primary development and of related developments;
(3) A copy of the bylaws and rules of the primary development and of other related developments as filed in the depository of the county in which the development is located;
(4) The minute books, including all minutes;
(5) Subject to the restrictions of § 11B-112 of this title, all books and records of the homeowners association, including financial statements, minutes of any meeting of the governing body, and completed business transactions;
(6) Any policies, rules, and regulations adopted by the governing body;
(7) The financial records of the homeowners association from the date of creation to the date of transfer of control, including budget information regarding estimated and actual expenditures by the homeowners association and any report relating to the reserves required for major repairs and replacement of the common areas of the homeowners association;

(8) A copy of all contracts to which the homeowners association is a party;
(9) The name, address, and telephone number of any contractor or subcontractor employed by the homeowners association;
(10) Any insurance policies in effect;
(11) Any permit or notice of code violations issued to the homeowners association by the county, local, State, or federal government;
(12) Any warranty in effect and all prior insurance policies;
(13) The homeowners association funds, including operating funds, replacement reserves, investment accounts, and working capital;
(14) The tangible property of the homeowners association;
(15) A roster of current lot owners, including their mailing addresses, telephone numbers, and lot numbers, if known;
(16) Individual member files and records, including assessment account records, correspondence, and notices of any violations; and
(17) Drawings, architectural plans, or other suitable documents setting forth the necessary information for location, maintenance, and repairs of all common areas.

55. That as of this date none of those items have been delivered to the home owners association or any lot owner.

56. That the Defendants despite request have refused the lot owners access to any of the above described information.

57. That the failure to notify the Plaintiffs or begin the process transferring and/or providing the above property to the Plaintiffs and the Class is a violation of the Maryland Real Property Article.

**COUNT THREE**
**VIOLATION OF MARYLAND REAL PROPERTY ARTICLE**
(Md. Code., Real Property, §11B-112(a))
(IAC)

58. Plaintiffs and the Class incorporate by reference all allegations contained in paragraphs 1 through 57 of the Complaint as if more fully set forth herein.

59. Md. Real Prop. Art. §11-b-112(a) states "all books and records kept by or on behalf of the homeowners association shall be made available for examination or copying, or

both, by a lot owner, a lot owner's mortgagee, or their respective duly authorized agents or attorneys, during normal business hours, and after reasonable notice."

60. That despite the requirements set out in Real Prop. Ari. §11-b-112(a) Defendant IAC has refused access to any records or information regarding the operation of the association.

61. That Defendants have twice in the past year raised dues for property owners without explanation and without access to records.

62. That the aforementioned failure and refusal of Defendant IAC is a violation of the Maryland Real Property Article.

## COUNT FOUR
## BREACH OF CONTRACT
(Common Law)
(IAC)

63. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 62 of the Complaint as if more fully set forth herein.

64. IAC was subject to an enforceable contract to operate Indian Acres until such time as the Declarations mandated that WSC must sell off the common amenities as well as control of the operations of the community to the lot owners.

65. That IAC has repeatedly materially breached and continues to materially breach its' contractual requirements by continuing to assess and collect dues from the Plaintiffs and other lot owners despite protest.

66. That pursuant to the Declarations these funds were not paid into the home owners association owned by the lot owners but instead paid to IAC.

67. That upon information and belief IAC has not only improperly assessed and collected these funds but has used these funds for expenses not outlined in the Restated Declaration and the By-Laws, in addition to other breaches involving mismanagement, and acts

of self-dealing.

68. That IAC's actions further constitute a breach of their fiduciary duties to the Plaintiffs and the Class, and further constitute a breach of the implied duty of good faith and fair dealing under the governing contract requirements at issue.

69. That despite numerous requests IAC has refused to permit the inspection and copying of any records associated with the operation of the business in violation of Md. Real Property Art. §11B-112.

70. As a direct and proximate result of Defendant's said conduct, Plaintiffs and the Class have suffered and will continue to suffer substantial damages and irreparable harm, and the dues which have been improperly been collected are in excess of Five Million Dollars.

### COUNT FIVE
### UNJUST ENRICHMENT
(IAC)

71. Plaintiffs and the Class incorporate by reference all allegations contained in paragraphs 1through 70 of the Complaint as if more fully set forth herein.

72. That Plaintiffs and members of the Class have conferred a benefit, in the form of annual dues and related payments to IAC.

73. That IAC had an appreciation or knowledge of the benefit.

74. That IAC's retention of such benefits under the circumstances described above make it inequitable for them to retain the benefit.

75. As a direct and proximate result of Defendant's said conduct, Plaintiffs and the Class have suffered and will continue to suffer substantial damages and irreparable harm, and the dues which have been improperly been collected are in excess of Five Million Dollars.

**COUNT SIX**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**
(Md. Code., Comm. Law, § 13-303 *et seq*.)
(WSC)

76. Plaintiffs and the Class incorporate by reference all allegations contained in paragraphs 1through 75 of the Complaint as if more fully set forth herein.

77. That WSC, as the original developer and owner of all lots, made false or misleading statements and representations which had the capacity, tendency, or effect of deceiving or misleading Plaintiffs and the Class regarding whether they would be common association owners of common elements and amenities after Eighty Percent (80%) of the Indian Acres lots had been sold to the public.

78. That WSC engaged in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts regarding the transfer of common elements and amenities with the intent that consumers rely on the same in connection with the subsequent purchase of individual lots.

79. That WSC was in the business of selling consumer realty, used Declarations and governing documents related to the sale of lots that contained a clause, in Section 11 of the Declaration, setting forth the intent to transfer common elements and amenities after Eighty Percent (80%) of the Indian Acres lots had been sold to the public when they had no intention to do so in violation of Md. Code Ann., Commercial Law § 13-301(13).

80. That WSC knew of the falsity and intended to induce reliance by Plaintiffs and the Class.

81. That Plaintiffs and the Class reasonably relied upon, were deceived by, and/or were affected in their actions by the unfair and deceptive trade practices of WSC.

82. As a direct and proximate result of Defendant's said conduct, Plaintiffs and the Class have suffered and will continue to suffer substantial damages and irreparable harm.

**COUNT SEVEN**
**DECLARATORY JUDGMENT**
(<u>Declaratory Judgment Act</u>, 28 U.S.C. §§ 2201, *et seq*.,)
(<u>Maryland Uniform Declaratory Judgment Act</u>, Md. Code, Cts. & Jud. Proc. §§3-401)

83. Plaintiffs and the Class incorporate by reference all allegations contained in paragraphs 1through 72 of the Complaint as if more fully set forth herein.

84. A present, actual and justiciable controversy exists between the parties as to the scope and immediate enforceability of the mandate in the Declarations requiring WSC to transfer common elements and amenities after Eighty Percent (80%) of the Indian Acres lots had been sold to the public.

85. Plaintiffs and the Class requests that the Court declare that the Declarations are enforceable and further find that WCS was required and failed to comply with the Declarations and other governing documents of Indian Acres.

86. Without a declaration, the parties cannot know their rights, status, obligations and legal relations on a go-forward basis.

87. All of the parties necessary to the adjudication of the existing controversy are before the Court, including the putative class.

88. Declaratory relief is appropriate pursuant to 28 U.S.C. §2201, and Md. Code Ann, Cts. & Jud. Proc. §§3-401, *et seq.*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class demands judgment against Defendants and asks that the Court grant the following relief:

A. Enter an Order certifying this matter as a class action as requested herein and declaring that this action is a proper class action pursuant to Federal Rule of Civil Procedure 23; and

B. Enter an Order appointing the Plaintiffs and Class representatives and the undersigned counsel as class counsel for the Class; and

C. Enter Declaratory relief that Defendants, either individually or collectively, have violated the Declarations and governing documents of Indian Acres and appoint a Trustee for the purposes of transferring all ownership of common areas to the lot owners, and for the purposes of reviewing and transferring all personal property and information regarding the operation of Defendant IAC to the home owners association; and

D. Enter judgment in favor of Plaintiffs and the Class against Defendants, jointly and severally; and

E. Award Plaintiffs and the Class economic damages available by law, including but not limited to the return of annual dues and all such amounts collected after Defendant WSC reached the threshold Eighty Percent (80%) sale requirement; and

F. Award Plaintiffs and the Class any and all other compensatory and consequential damages available by law in an amount to be proved at trial; and

G. Award Plaintiffs and the Class any and all punitive or exemplary damages available by law; and

H. Award Plaintiffs and the Class pre-judgment interest and post- judgment interest to the extent and in an amount permitted by law; and

I.      Award Plaintiffs and the Class costs and reasonable attorneys fees to the extent and in an amount permitted by law; and

J.      Award such other relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted.

By:_____
FRANK V. BOOZER, JR., ESQ.
Fed. Bar No. 28478
Covahey & Boozer, P.A.
614 Bosley Ave.
Towson, MD 21204
(410)-828-9441
fboozer@cablaw.com
Attorneys for Plaintiffs

Dated:   April 27, 2018