IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TANYA EMKEY, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Action No.: RDB-18-1304 |
| W.S.C., Inc., *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

Plaintiffs Tanya and Timothy Emkey ("the Emkeys" or "Plaintiffs"), residents of Florida, allege that the Defendants, W.S.C., Inc. ("WSC"), a Pennsylvania Corporation, and its wholly owned Maryland subsidiary, Indian Acres Club of Chesapeake Bay, Inc. (the "Indian Acres Club" or "the Club") (collectively, "Defendants"), have breached their obligation to transfer ownership and operation rights of common amenities in a planned campground, Indian Acres of Chesapeake Bay ("Indian Acres"), to themselves and other similarly situated owners of campground lots, or "Funsteads." (Compl. ¶ 13.) The Emkeys' Complaint (ECF No. 1) asserts five counts, all sounding in Maryland state law: breach of contract (Counts One and Four); violations of the Maryland Real Property Article, Md. Code, Real Prop., § 11B-106.1, *et seq.* (Counts Two and Three); unjust enrichment (Count Five); unfair and deceptive trade practices (Count Six); and seeks a declaratory judgment (Count Seven). (*Id.*) Plaintiffs filed their Complaint in this Court pursuant to the jurisdiction conferred under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).[1]

---

[1] Pursuant to 28 U.S.C. § 1332(d)(2)(A), federal courts maintain jurisdiction over class actions in which

1

Pending before this Court is Defendants' Motion for Summary Judgment (ECF No. 33). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Defendants' Motion for Summary Judgment (ECF No. 33) is GRANTED, and Judgment is ENTERED in favor of Defendants, W.S.C. and Indian Acres Club.

## BACKGROUND

### I. Factual Background.

This dispute arises out of the Emkeys' claim that the Defendants have failed to uphold their contractual obligation to transfer ownership and operation rights of common amenities in a planned campground, known as Indian Acres. (*Id.* at ¶¶ 45.) Indian Acres is a 300-acre property in Cecil County, Maryland which has been subdivided into nine Glens containing individually-owned campground lots, or "Funsteads." (Compl. ¶ 19; Ans. ¶ 19.) Defendant WSC, a Pennsylvania corporation which operates in Cecil County, was created to develop Indian Acres and continues to engage in the sale of Funsteads. (Compl. ¶ 18; Ans. ¶ 18; Defs.'s Ex. I, Restated Declaration at 330, ECF No. 33-2.)[2] Defendant Indian Acres Club is a Maryland corporation which manages and operates the campground. (Compl. ¶ 19; Ans. ¶ 19.) The Emkeys allege that they jointly own three Funsteads. (Compl. ¶ 14, 16, 17.)

---

(1) there is diversity of citizenship between any member of the class and any Defendant and (2) the amount in controversy exceeds $5,000,000.00. In a prior Order (ECF No. 36), this Court denied the Plaintiffs' Motion for Class Certification. As this Court has discussed in a prior opinion, there is a growing consensus that federal courts retain subject matter jurisdiction under CAFA even after class certification is denied. *See Pelino v. Ward Mfg., LLC*, RDB-14-02771, 2015 WL 4528141, at *5 (July 27, 2015) (retaining subject matter jurisdiction after denying class certification even though plaintiffs' claim failed to meet the amount-in-controversy requirement under 28 U.S.C. § 1332(a)). Accordingly, this Court retains jurisdiction over this matter even though it has denied the plaintiffs' motion for class certification in a prior Memorandum Order (ECF No. 36).

[2]  Pincites associated with Exhibits refer to the original pagination of the cited document, not the pagination assigned by the Court's Electronic Filing System.

### A. The Restated Declaration.

The Emkeys' claims arise from the Defendants' alleged breach of the terms of a Restated Declaration recorded in the Land Records for Cecil County, Maryland (Compl. ¶ 29; Ans. ¶ 20.) On July 6, 1978, WSC executed a Restated Declaration to "establish[] and create[] certain restrictions in furtherance of the plan for the subdivision, improvement and sale of the subdivided numbered lots (hereinafter referred to as "Funsteads") set forth and described in the recorded plats [for Indian Acres]." (Restated Declaration at 330.) The Restated Declaration sets forth that its restrictions "run with the land and shall be binding on all parties having acquired any right, title or interest in and to the real property or any part or parts thereof, or right to use any part or parts thereof subject to such Restrictions." (*Id.* at 331.) The covenant prohibits the use of Funsteads "except for camping purposes" and specifically declares that "No Funstead shall be used as a residence[.]" (*Id.* at §§ 4(A), 7(A)(1)).

The document also establishes the authority of the Indian Acres Club as follows:

> The purchaser of a Funstead acknowledges that the Declarant[3] has granted to Indian Acres Club of Chesapeake Bay, Inc. a non-stock Maryland Corporation, (hereinafter referred to as the 'Club') the exclusive right to operate and maintain all community areas and recreational facilities and understands that the Club is engaged in the sale of membership to the general public[.]

(*Id.* at § 11 (A)).

> The Club shall have all the powers that are set out in its Articles of Incorporation and all other powers that belong to it by operation of law, including, but not limited to, the power to levy against every member of the Club a uniform annual charge per Funstead or membership in the amount of such charge to be determined by the club after consideration of current maintenance needs, leasing fees and future needs of the Club, for the purposes set forth in its Articles of Incorporation.

---

[3] WSC is the "Declarant" referred to in the Restated Declaration.

3

(*Id.* at §11(E)).

The Emkeys claim that the Defendants have failed to abide by § 11(K) of the Restated Declaration by failing to transfer the "common elements" of Indian Acres to the Funstead owners. (Compl. at ¶¶ 3, 22.) This provision specifies that WSC must "transfer to the Club all of the Declarant's rights and obligations with respect to the operation of [Indian Acres] (excepting rights with respect to the then unsold Funsteads) . . . when eighty (80%) of the total number of Funsteads held for sale or other disposition by Declarant and its predecessors have been sold, leased, conveyed or otherwise disposed." (*Id.* at § 11(K)). The provision further specifies how the number of Funsteads are to be tallied and how the transfer is to effectuated. The total number of Funsteads must be "determined with reference to the latest recorded plat or plats covering all nine (9) Glens[]." (*Id.*) When 80% of the total number of Funsteads have been conveyed, "[t]he Club will be obligated to purchase from the Declarant all of the common areas and recreational facilities[.]" (*Id.*) The purchase price is also stated with specificity: it is to be "equal to the figure obtained by multiplying the number of Funsteads sold, under contract of sale, or otherwise disposed of, along with a contract reference to this obligation, by $495.00, such price to be paid in case by the Club to the Declarant." Finally, when WSC receives the Club's payment, "[WSC] will execute and deliver to the Club a deed conveying title to such common areas and recreational facilities, and all of the Declarant's rights and obligations with respect to the property (excepting rights with respect to the then unsold Funsteads)." (*Id.* at § 11(K)(2).)

### B. Indian Acres Club By-Laws

The Emkeys also claim that the Indian Acres Club has violated its own By-Laws by

improperly assessing fees and engaging in "mismanagement, and acts of self-dealing." (*Id.* at ¶ 67.) The By-Laws of Indian Acres Club ("By-Laws") provides that the purpose of the corporation is to "operate, manage and maintain, the development known as Indian Acres of Chesapeake Bay, Cecil County, Maryland." (Defs.'s Ex. J, By-Laws Art. 1 § 3, ECF No. 33-1.) The By-Laws complement WSC's obligations to transfer ownership of the campground's common amenities. They specify that the Club must purchase all of the community areas and recreational facilities in Indian Acres from WSC when eighty percent (80%) of the total number of Funsteads at Indian Acres are sold or under contract. (*Id.* at Art. 8 § 5.) The method of determining the total number of Funsteads is the same in the By-Laws as in the Restated Declaration: they are to be "determined with reference to the latest recorded plat or plats covering all nine Glens." (*Id.* at Art. 8 § 5.) As stated in the Restated Declaration, the purchase price for the amenities will be $495 per each sold Funstead.

### C. The Total Number of Funsteads and the 80% Threshold.

Plaintiffs allege that Indian Acres consists of 2,154 lots and that WSC's own internal audit of May 2017 found that WSC had sold eighty-one percent (81%) of the original lots. (Compl. at ¶ 25.) Despite this, Plaintiffs allege, the Defendants have not transferred ownership of Indian Acres' common amenities as they are contractually obligated. To support these allegations, Plaintiffs attached the "internal audit" to their Complaint—an unsigned, two-page document labeled "Land Inventory as of May 31, 2017" which concludes that Indian Acres consists of 2,154 lots and that 414 of these remained unsold. (Compl. Ex. 2, ECF No. 1-2.)

Plaintiffs have failed to produce any competent evidence tending to prove these allegations. As set forth in the Restated Declaration, upon which Plaintiffs' case rests, the total

5

number of Funsteads must be calculated with reference to the latest recorded plat or plats covering all nine Glens. The plats for Indian Acres were last modified in 1987. (Defs.'s Ex. K, ECF No. 33-2.) All evidence in the record generated after 1987 supports the conclusion that there is between 2,174 and 2,176 Funsteads and that less than 80% of these have been sold. An August 12, 2004 letter from William Sklar to a potential buyer of Indian Acres, Joseph San Fillippo, stated that there were 2,174 Funsteads in Indian Acres. (Defs.'s Ex. L.) Plaintiffs' own witness,[4] John Stephen Bossom, a title searcher, concluded that there were a total of 2,175 Funsteads in Indian Acres and that 1,668 of these (76.6%) had been sold. (Defs.'s Ex. H, Bossom Dep. Tr. 20:4-8; Defs.'s Ex. M.) Both the President of Indian Acres Club and WSC (Joseph Behrle) as well as the Vice President of the two entities (Don Hays) testified that the 80% threshold had not been reached. Finally, a map produced by Cecil County depicting Funstead ownership as of January 4, 2017 reveals that there are 2,176 Funsteads in Indian Acres and that WSC owns 559 (25.68%) of them. (Defs.'s Ex. N.)

The only evidence challenging this conclusion is the testimony of Linda McLaughlin, a witness for the Plaintiffs. McLaughlin testified that she was told by Robert Minissale, the former owner of WSC, that there are 2,154 Funsteads in Indian Acres (Defs.'s Ex. G, McLaughlin Dep. Tr. 62:17-63:1, 65:18-66:1.) McLaughlin has never personally analyzed whether there were 2,154 Funsteads in Indian Acres. (*Id.* at 63:2-7.) During her deposition, she testified that she did not know where the figure of 2,154 came from and that she did nothing to verify that the number was correct. (*Id.*) Based on this unsupported assumption, McLaughlin concluded that 80% of the Funsteads have been sold. (*Id.* at 57:9-58:4.)

---

[4]  Plaintiffs have not designated Bossom as an expert witness.

## II. Procedural History.

On April 27, 2018, the Emkeys, on behalf of themselves individually and all other similarly situated, filed a Class Action Complaint in this Court pursuant to its jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Plaintiffs assert claims for breach of contract (Counts I and IV), violations of the Maryland Homeowners Association Act ("MD HOA Act") (Counts II and III), unjust enrichment (Count V), unfair and deceptive trade practices (Count VI), and declaratory judgment (Count VII). (ECF No 1.) On March 21, 2019, this Court issued a Memorandum Order (ECF No. 36) denying the Emkeys' Motion for Conditional Certification and to Send Notice to the Class (ECF No. 14) and denying as moot the Defendants' Motion to Limit Plaintiffs' Communications with the Putative Class (ECF No. 21.) The Defendants' Motion for Summary Judgment (ECF No. 33) remains pending.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.'" *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)). When considering a motion for summary judgment, a judge's function is limited to determining

whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

### I. Defendants are Entitled to Summary Judgment on Counts One, Four, Five, Six, and Seven.

In Counts One and Four of their Complaint, the Emkeys allege that Defendants breached their contractual obligations under the Restated Declaration by refusing to transfer common amenities to Funstead owners. In Count Five, Plaintiffs allege that Indian Acres Club has unjustly enriched itself by assessing annual dues and related payments. Finally, in Count Six, Plaintiffs allege that WSC made "false or misleading statements" which mislead the

Plaintiffs "regarding whether they would be common association owners of common elements and amenities after Eighty Percent (80%) of the Indian Acres lots had been sold to the public." (Compl. ¶ 77.) In Count Seven, Plaintiffs seek a Declaratory Judgment. All of these Counts (Counts One, Four, Five, Six, and Seven), are premised on Plaintiffs' contention that the Second Restated Declaration requires the Defendants to transfer the common amenities of Indian Acres to the Funstead owners upon the sale of 80% of the total Funsteads. Defendants seek Summary Judgment on these Counts, arguing that Plaintiffs have failed to produce sufficient evidence to raise a genuine issue as to whether the 80% threshold has been reached.

**A. Plaintiffs have failed to Raise a Genuine Issue of Material Fact as to the Percentage of Funsteads Sold.**

The Restated Declaration and By-Laws are interpreted under principles of contract law. *See Belleview Const. Co., Inc. v. Rugby Hall community Ass'n, Inc.*, 321 Md. 152, 157 (Md. 1990). As the Restated Declaration was recorded in Maryland and the By-Laws govern a non-stock Maryland corporation, Maryland law governs. In Maryland, courts observe "the objective interpretation principle," which means that, "[i]f the language of [a] contract is unambiguous, we give effect to its plain meaning and do not delve into what the parties might have subjectively intended." *O'Brien & Gere Engineers, Inc. v. City of Salisbury*, 447 Md. 394, 489, 135 A.3d 473 (2016) (citing *Ford v. Antwerpen Motorcars, Ltd.*, 443 Md. 470, 477, 117 A.3d 21 (2015) (citation and internal quotation marks omitted)). The relevant text of the Restated Declaration instructs, *inter alia*, that:

> K. It is the intention of the Declarant [WSC] that at a certain time in the future, Declarant will transfer to the Club all of the Declarant's rights and obligations with respect to the operation of the Property (excepting rights with respect to the unsold Funsteads). Declarant [WSC] and its predecessors in interest respecting the property, have contracted with certain Funstead purchasers and

9

> Funstead owners that the time of such transfer shall take place when eighty (80%) percent of the total number of Funsteads held for sale or other disposition by Declarant [WSC] and its predecessors have been sold, leased, conveyed or otherwise disposed of (which total number of Funsteads shall be determined with reference to the latest recorded plat or plats covering all nine (9) Glens). At such time as such requisite number of Funsteads have been disposed of:
>
>> 1. The Club will be obligated to purchase from the Declarant all of the common areas and recreational facilities on the Property for a total purchase price equal to the figure obtained by multiplying the number of Funsteads sold, under contract of sale, or otherwise disposed of, along with a contract reference to this obligation, by $495.00, such price to be paid in cash by the Club to the Declarant at such times and in such amounts as the Club becomes entitled to payment from its membership, unless Declarant expressly approves in writing some alternate manner of payment.
>
> (Restated Declaration at § 11(K)(1))

The plain language of this provision requires WSC to sell to the Club the common areas and recreational facilities in Indian Acres once 80% of the total Funsteads have been sold. Likewise, the plain language of the Restated Declaration requires that the total number of Funsteads must be calculated with reference to the latest recorded plat or plats covering all nine (9) glens in Indian Acres.

There is no genuine dispute that there are between 2,174 and 2,176 Funsteads and that the 80% threshold has not been reached. Plaintiff's own witness, Mr. John Steven Bossom, concluded based on his examination of the plats and reference to the grantor/grantee index that there are 2,175 total Funsteads in Indian Acres and that 1,668 (76.6%) had been sold. (Bossom Dep. Tr. 20:4-8.) A map produced by Cecil County indicates that there are 2,176 total Funsteads in Indian Acres and that WSC still owns 559 (25.68%) of them. (Defs.'s Ex. N, ECF No. 33-2.) A business letter sent by William Sklar to a potential buyer and dated

August 12, 2004, represents that there are 2,174 total Funsteads on the property. (Defs.'s Ex. L, ECF No. 33-2.) Finally, both the President and Vice Presidents of WSC and Indian Acres testified that the 80% threshold had not been reached.

The only evidence to the contrary comes from the testimony of Linda McLaughlin who, as previously discussed, based her opinion entirely on hearsay. McLaughlin testified that she kept an inventory of salable Funsteads based on Robert Minissale's representation that there were 2,154 Funsteads. (McLaughlin Dep. Tr. 58:1-63:7.) McLaughin was unable to explain how this figure was derived or what it meant. (McLaughlin Dep. Tr. 57:19-63:16.) Moreover, even if McLaughlin's 2,154 tally were correct, there is no evidence in the record that 80% of this amount was ever sold. At most, Plaintiffs have offered evidence in the form of Bossom's deposition testimony that 1,668 of the Funsteads had been sold. Applying McLaughlin's figure of 2,154, the sale of 1,668 Funsteads represents a sale of 77.4% of the total amount.

### B. Plaintiffs Have Failed to Engage in Discovery.

The lack of record evidence is in part the product of the Emkeys' complete failure to engage in discovery. Federal Rule of Civil Procedure 36 provides that "failure to respond to a request for admissions within 30 days of being served results in the matter being automatically deemed admitted." *Acosta v. Mezcal, Inc.*, Civ. No. JKB-17-0931, 2018 WL 4188448 (Aug. 31, 2018); *see also* Fed. R. Civ. P. 36(a)(3). Pertinent to this case, is that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

On October 18, 2018, Indian Acres Club served its First Set of Requests for

11

Admissions by e-mail and first-class mail. (ECF No. 33-2 at 77–78, 81–82.) Plaintiffs were required to respond to the requests for admissions on or about October 17, 2018. *See* Fed. R. Civ. P. 36(a)(3). As of January 11, 2019, the date Defendants moved for summary judgment, the Emkeys had not admitted, objected, answered or otherwise responded to Defendants' request for admissions. (ECF No. 33-1 at n.4.) By failing to do so, Plaintiffs admitted, *inter alia*, "that W.S.C., Inc. presently owns more than twenty 20% percent of the Funsteads in Indian Acres." (Defs.'s Ex. D.)

Plaintiffs also did not fully engage in document production. They did not request any written production from Defendants. The evidence they have produced is not admissible and cannot avoid Summary Judgment. *See* Fed. R. Civ. P. 56(e); *Greensboro Prof' Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995) (holding that affidavits and depositions based on hearsay are "neither admissible at trial nor supportive of an opposition to a motion for summary judgment"); *Orsi v. Kirkwood*, 999 F.2d 86, 91-92 (4th Cir. 1993) ("Additionally, plaintiffs did not offer their proof in the proper, authenticated form."). Plaintiffs produced to Defendants purported Indian Acres Club documents, allegedly pulled from trashcans and dumpsters by Funstead owners, and which cannot be verified as business records. (Defs.'s Ex. F, Emkey Tr. 18:1-19:14, 68:16-74:17; 89:10-93:21.) They have also produced inadmissible hearsay from other Funstead owners, unnamed employees in Indian Acres, Linda McLaughlin, Robert Minissale, and an unknown representative from Interstate Land Sales. (Defs.'s Ex. F, Mrs. Emkey Dep. Tr. 16:17-17:19, 39:2-45:21, 92:12-105:4.) As Plaintiffs have failed to support their claims with any admissible evidence, they have failed to raise a genuine issue of material fact as to the amount of Funsteads which exist and have been

sold. Consequentially, Defendants are entitled to Summary Judgment on Counts One, Four, Five, Six, and Seven.

### C. Prior Transactions Do Not Provide Any Basis for Denying Summary Judgment.

Tacitly acknowledging that they have produced no evidence to support their claims, Plaintiffs Response in Opposition to Defendants' Motion (ECF No. 34) attempts to shift focus to documents executed before the Restated Declaration. Although the Complaint makes reference to the Restated Declarations of July 1978 (Compl. ¶ 20), Plaintiffs' opposition brief nebulously avers that "[t]he facts show that the Plaintiffs have achieved the 80% requirement several times since 1972." (ECF No. 34 at 2.) Plaintiffs have attached a Land Installment Contract between Indian Acres of Chesapeake Bay, Inc. and William R. Crouse signed on April 25, 1974, which states that:

> Purchaser hereby acknowledges reading and understanding the covenants and restrictions obligating the Club to purchase from the developer all of the common facilities and obligating each member to pay toward the purchase price $495.00 per Funstead site within ninety (90) days after eighty percent (80%) of the Funstead sites have been sold.

(Pls.'s Ex. F.)

Additionally, Plaintiffs argue that the 80% threshold was reached upon the transfer from the previous operator of Indian Acres to WSC in August 1977.

Plaintiffs cannot avoid Summary Judgment by making reference to events which preceded the Restated Declaration. It is axiomatic that Plaintiffs cannot advance one theory to support their claims in their pleadings and then introduce a new theory in opposition to Summary Judgment. *See, e.g.*, *3PD, Inc. v. U.S. Transport Corp.*, GJH-13-2438, 2015 WL 4249408, at *4 (D. Md. July 9, 2015) (citations omitted). Accordingly, Plaintiffs cannot allege that

13

Defendants are in breach of the Restated Declaration only to raise new issues on Summary Judgment concerning a land sale which occurred before the Restated Declaration came into existence. Additionally, even considering the 1977 transfer to WSC, the Restated Declaration affords no rights to the Emkeys on the basis of a sale between land developers. Finally, Plaintiffs do not have standing to bring causes of action under the 1974 Land Installment Contract because they are not parties to that agreement.

## II. Defendants are Entitled to Summary Judgment on Counts Two and Three.

Counts Two and Three of the Emkeys' Complaint are premised on alleged violations of the Maryland Homeowners Association Act ("the Act"), Md. Code, Real Prop. § 11B-106.1, *et seq*. In Count Two, Plaintiffs allege that Defendants have failed to uphold their obligations under the Act by failing to convene a homeowners association meeting and providing certain information. In Count Three, Indian Acres Club is alleged to have violated the Act by refusing access to any records or information regarding the operation of "the association." (Compl. ¶ 60.) Defendants argue that, based on the undisputed facts of this case, Funstead owners are not entitled to form a homeowners association and are not entitled to the privileges and procedures conferred by the Act.

The Act plainly states that it does not apply to, *inter alia*, "any property which is to be occupied and used for nonresidential purposes." MD Code Ann., Real Prop. § 11B-102. The Act further specifies that until such time as the developer sells "at least 75 percent of the total number of lots . . . for residential purposes," lot owners do not have a right to elect a governing body for the homeowners association. § 11B-106.1(a)(1). Once this 75% threshold is reached, the developer becomes obligated to turn over the real property, personal property, and

14

information regarding to the homeowners association to lot owners. § 11B-106.1(d). The Act defines a "lot" as "any plot or parcel of land on which a dwelling is located or will be located within a development." § 11B-101(j)(1).

In this case, Plaintiffs cannot raise a genuine issue as to whether the Funsteads are residential properties subject to the provisions of the Act. There is simply no evidence that these campsites are residential properties. To the contrary, the Restated Declaration, provides that "[n]o Funstead shall be used except for camping purposes," and, more specifically, "[n]o Funstead shall be used as a residence or for anything except camping purposes." (Restated Declaration at § 4(A), 7(A)(1)). As the Restated Declaration evades any potential classification of the Funsteads as residential spaces, there is no basis for the conclusion that the Emkeys are entitled to rights conferred by the Maryland Homeowners Association Act.

Moreover, the Maryland state courts have already determined that Indian Acres is a non-residential property. In *Jane Doe, et al. v. Cecil County Board of* Commissioners, No. 07-C-02-000231, (Cecil Cty. Cir. Ct. June 27, 2007) the Circuit Court for Cecil County, Maryland rejected the Funstead owners request for a declaratory judgment that the Funsteads on Indian Acres did not fall within the definition of a campground in the Cecil County Zoning Ordinance. *Id.* at 3. The Funstead owners had been using the campground as their primary residence in defiance of the Cecil County Office of Planning. *Id.* at 2-3. The Court declined to grant the requested relief, holding that the Funsteads on Indian Acres were campgrounds and that the Indian Acres Declaration of Restrictions "prohibited the building of permanent residential structures and the use of Funsteads for purposes other than camping." *Id.* at 7. The Maryland Court of Special Appeals affirmed this decision in an unpublished opinion. *See*

15

*Darone, et al., v. Bd. of Cty. Commissioners of Cecil Cty.,* No. 1220, at *18, 20 (Md. Ct. Spec. App. 2008).

Despite the incontrovertible limitation on use detailed in the Restated Declaration and the opinions issued in the Circuit Court for Cecil County and the Maryland Court of Special Appeals, Plaintiffs attempt to suggest that Funstead owners may form a homeowner's association. Plaintiffs support this weak contention by attaching an unauthenticated copy of a Form 1120-H to its responsive brief. (Pls.'s Ex. B, ECF No. 34-2.) A Form 1120-H is a United States Income Tax Return for Homeowner's Associations. It was purportedly filed by Indian Acres Club in 2015. (*Id.*) Accepting this proffer for the purposes of analyzing Plaintiffs' argument, this tax form has no bearing on the Funstead's true legal status. The Restated Declarations, the courts, and even Plaintiffs agree that Indian Acres is a campground. (*See* Pls.'s Resp. at 2-3, ECF No. 34 (characterizing Indian Acres as "a planned campground" and explaining that Funsteads are "for camping purposes.")). As Plaintiffs have failed to adduce credible evidence that Indian Acres is a residential property governed by the Act, Defendants are entitled to Summary Judgment on Counts Two and Three of the Plaintiffs' Complaint.

## CONCLUSION

For the aforementioned reasons, this Court finds that there are no genuine issues as to any material fact in this case and, as such, Defendants are entitled to Summary Judgment. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 33) is GRANTED, and Judgment is ENTERED in favor of Defendants.

A separate Order follows.

Dated: August 21, 2019 _____/s/_____
Richard D. Bennett
United States District Judge